C. R. PICKENS and Wife, Babe Pickens, Appellants,

v.

T. L. BAKER, Appellee.

No. 9012.

Court of Civil Appeals of Texas, Amarillo.

Sept. 21, 1979.

C. J. Humphrey, Amarillo, for appellants.

Ebelardo G. Lopez and John L. Owen, Asst. County Attys., Amarillo, for appellee.

COUNTISS, Justice.

This appeal is from a judgment denying various judgment creditors recovery against the Sheriff of Potter County for his alleged failure or refusal to levy upon and sell property of the judgment debtor subject to execution. We affirm the judgment of the trial court.

On April 18, 1978, C. R. Pickens and various other creditors, appellants here, recovered judgment against Hamlet Baptist Church, also known as Bible Baptist Temple, in the principal sum of $6,277.50 plus interest, court costs and attorney's fees.[1] On May 25, 1978, the creditors obtained a writ of execution directing any Texas sheriff or constable to levy on and sell property of the church subject to execution sufficient to pay the judgment and costs. The writ was delivered to the Potter County Sheriff's Office on the same date. Shortly thereafter, a deputy sheriff went to the church and discussed the matter with the pastor who agreed to prepare an inventory of the church property for the Sheriff's use in determining which property was subject to execution.

The inventory was prepared and delivered to the deputy sheriff on June 6, 1978. It contained a list of personal and real property with notations as to various liens on the property, and a lengthy list of names of individuals who were described as "Lienholder—Bondholders Under New Finance Program." The information on the inventory was made available to the creditors' counsel and on June 13, 1978, counsel directed the Sheriff to levy on the office equipment and a church bus. The inventory listed a lien to the North State Bank of Amarillo on the office equipment. The deputy sheriff who was handling the matter advised the creditors' counsel that he would have to "do some more checking" to determine whether the Sheriff's office could levy on the property. The Sheriff then sought and received from the County Attorney of Potter County an opinion dated June 20, 1978, outlining various areas of the law pertinent to the Sheriff's right to require an indemnity bond before levying execution. Thereafter, the Sheriff requested an indemnity bond, which the creditors failed to provide.

The first writ of execution expired, and the creditors' counsel asked the Sheriff's office to return it so that a new writ of execution could be issued. The first writ was returned nulla bona and on July 10, 1978, a new writ was issued. Various discussions continued between the Sheriff's personnel and the creditors' counsel concerning a levy on the office equipment and the Sheriff's request for an indemnity bond, but no levy was made and no bond was furnished. On July 31, 1978, the second writ was returned by the Sheriff's office nulla bona. Prior to that date, the office equipment had been repossessed by the North State Bank.

---

1. For convenience the appellant judgment creditors will be referred to as "the creditors," appellee Sheriff T. L. Baker of Potter County as "the Sheriff" and the judgment debtor Hamlet Baptist Church, also known as Bible Baptist Temple, as "the church."

The case now before this court originated on August 4, 1978, when the creditors filed a motion against the Sheriff seeking recovery under Article 3825, Tex.Rev.Civ.Stat. Ann. (1966) for the amount of the judgment because of the Sheriff's failure to levy on the office equipment.[2] Following a non-jury trial, judgment was entered for the Sheriff and the trial court filed findings of fact and conclusions of law supportive of its judgment.

The creditors bring forward twenty-one points of error which present three basic questions for decision by this court: First, under what circumstances may an officer require an indemnity bond from a judgment creditor before proceeding under a writ of execution; second, is there proper evidentiary support for the findings of fact of the trial court that justify the indemnity bond requested by the Sheriff in this case; and, third, is there an abuse of discretion by the trial court in permitting the Sheriff to file pleadings after the trial was in progress.

This case is founded on Article 3825, Tex.Rev.Civ.Stat.Ann. (1966) which states the potential liability of the Sheriff:

> Should an officer fail or refuse to levy upon or sell any property subject to execution, when the same might have been done, he and his sureties shall be liable to the party entitled to receive the money collected on such execution for the full amount of the debt, interest and costs, to be recovered on motion before the court from which said execution issued, five days previous notice thereof being given to said officer and his sureties.

The right of a levying officer to require an indemnity bond was considered in depth in the case of *Rankin v. Belvin*, 507 S.W.2d 908 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). In that case, the court reviewed the cases establishing the right, analyzed the various approaches to the problem and stated the correct rule as follows:[3]

> . . . Based on these decisions, we hold that a levying officer has the right to require an indemnity bond before levying execution when, as a matter of his discretion, he has a reasonable doubt as to the ownership of the property, the enforcibility of the judgment, or other matters affecting the propriety of the execution.

*Rankin v. Belvin*, supra, at 911.

It is important to remember that the discretion granted to the levying officer is limited to situations where he has "reasonable doubt" in one of the three areas specified. The discretion thus granted does not encompass liens on the property, for as stated in *U. M. & M. Credit Corporation v. Doss*, 452 S.W.2d 45, 48 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.):

> The mere fact that the property was mortgaged, if it was, did not justify the sheriff's failure to levy the writ. Doss may have had an equity in the property which would have been subject to execution. *Smothers v. Field, Thayer & Co.*, supra. The officer was unauthorized to determine in advance whether the property would at public auction bring more or less than the amount of the prior liens. *Burkett v. Simmons Hardware Co.*, 52 S.W.2d 675 (Tex.Civ.App., Waco 1932, no writ). His only duty was to levy the execution on the property, advertise it for sale and hold the sale in accordance with the law.

In the case before this court, therefore, the Sheriff's demand for an indemnity bond must be based on reasonable doubt within one of the three areas specified if his failure to levy on the office equipment is to be excused.

In its findings of fact, the trial court specifically found several times that the

---

**2.** The motion complained of the failure to levy on "all personal property" on the list provided by the church, but the creditors have pursued only the failure to levy on the office equipment.

**3.** The rule is limited to executions on personal property. If land is the subject of the execu-

tion, the Sheriff cannot be subjected to a suit for damages, *Henry S. Miller Company v. Evans*, 452 S.W.2d 426, 433–434 (Tex.1970) and he does not have the discretion to require an indemnity bond.

first ground existed, i. e., that the Sheriff entertained doubt as to the ownership of the office equipment. Those findings are attacked here by the creditors as being without support in the evidence or "so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust."

In considering this problem area, we are guided by well settled rules of appellate review. The "no evidence" point presents a question of law that requires the appellate court to consider only the evidence and inferences tending to support the finding under attack and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Our review of the evidence under the foregoing standard reveals testimony and an exhibit which provide some evidentiary support for the finding in question. The "no evidence" point is, therefore, overruled.

The "insufficiency" point, on the other hand, invokes a broader standard which requires this court to consider all of the evidence in order to determine whether the evidence supporting the finding is so weak, or the evidence to the contrary so overwhelming, that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, supra. In considering an "insufficiency" point, however, we are particularly cognizant of the role of the trier of fact. The trier of fact in this case, the trial judge, had the opportunity to observe the demeanor of the witnesses on the stand and to judge their credibility. It is his function to determine the weight to be given their testimony and to resolve conflicts in the testimony of one witness with another. He can believe all of a witness' testimony, none of it or part of it while disregarding other portions. Within this framework, the findings of fact made by the trial court will be sustained if there is some evidence of probative value to support them, and they are not against the great weight and preponderance of the evidence. Even if the appellate court would have found facts contrary to those found by the trial judge (or jury) after reviewing the evidence, it cannot substitute its judgment for that of the fact finder if the findings meet the evidentiary test just stated. *Loeb, Rhoades & Co. v. Stanley*, 541 S.W.2d 869, 871–872 (Tex.Civ. App.—Corpus Christi 1976, no writ); *Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App. —Amarillo 1977, writ ref'd n.r.e.).

This ancient and fundamental rule of appellate review recognizes an elemental aspect of human nature. The words we see at the appellate level are only a portion of the factors that are considered by the fact finder in evaluating the weight of the evidence. The witness' believability is ascertained from the witness' demeanor as well as from the words spoken. It is from the total activity in the arena that the fact finder forms the fundamental impressions that determine the facts.

In the case before us, we have carefully reviewed all of the evidence, in accordance with the foregoing standard, to determine whether there is sufficient evidentiary support for the findings that the Sheriff had doubts about the ownership of the office equipment. We have concluded that there is evidence of probative value to support the findings, and they are not so against the great weight and preponderance of the evidence as to be manifestly unjust. We therefore, overrule the insufficiency point.

That is not to say, however, that the evidence is clear and unequivocal. There are, in fact, internal inconsistencies within the testimony of each of the relevant witnesses, but the resolution of these inconsistencies is the trial judge's responsibility. Two deputy sheriffs testified about the efforts made to levy on the office equipment. Their testimony, in summary, was that there was considerable confusion about the ownership of the office equipment and other church property and the nature of the interest claimed by the "Lienholder—Bondholders." Each of the deputy sheriffs specifically testified to uncertainty and doubt about ownership of the property. They also testified that their concern was with the liens and not with ownership, and a fair reading of their testimony indicates they

were equating liens on the office equipment with ownership interests in the office equipment. Their testimony, standing alone, is weak at best. The evidence also reveals, however, and the court found, that four days after the second writ of execution was issued, the Sheriff was given a copy of a promissory note and security agreement in favor of the North State Bank with the office equipment in question listed as collateral. The note was signed by three persons apparently in their individual capacities, and the church is not mentioned in the note or security agreement. In the security agreement the three signatories warrant that "debtor is absolute owner of the collateral . . . ." This exhibit, in conjunction with the testimony, is sufficient to support the trial court's findings of doubts as to ownership. The doubts were reasonable in view of the warranty in the security agreement, and under the case law discussed above, the Sheriff was justified in requiring an indemnity bond before levying execution.[4] Since the creditors did not furnish the bond, the Sheriff is not liable for his failure to levy on the office equipment.[5]

The final problem area concerns the action of the trial court in permitting the Sheriff to file pleadings after the trial had begun. The creditors' motion against the Sheriff was filed on August 4, 1978, and service was subsequently accepted by the Sheriff. The trial began on August 22, 1978, with no pleadings on file for the Sheriff. After the first day of trial, the case was recessed until August 24, 1978. On that date and before the trial resumed, the Sheriff filed an answer to the creditors' motion, pleading among other things his defense of reasonable doubt as to ownership. The creditors' counsel objected unsuccessfully to the filing of the pleadings but did not move for a continuance.

Rule 66, Tex.R.Civ.P. vests the trial court with broad discretion to permit filing of pleadings during the course of the trial and directs the court to "do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence." Absent an abuse of that discretion, there is no reversible error. *Victory v. State*, 138 Tex. 285, 158 S.W.2d 760, 763 (Tex.1942). In establishing an abuse of discretion, it is incumbent upon the complaining party to show both surprise and a request for a continuance to meet the surprise engendered by the new pleadings. *H. O. Dyer, Inc. v. Steele*, 489 S.W.2d 686, 688 (Tex.Civ. App.—Houston [1st Dist.] 1972, no writ).

We have reviewed the circumstances surrounding the filing of the pleadings in question, and we find no abuse of discretion. The trial judge had a reasonable basis for concluding that the creditors were not unduly surprised by the allegations of reasonable doubt as to ownership since that issue had already been discussed frequently by counsel, the Sheriff's personnel and other persons before and during the trial. In any event, by failing to move for a continuance, the creditors are precluded from pursuing the objection before this court.

4. We realize that there is no evidence that a copy of the note and security agreement was furnished to the Sheriff before the first writ was returned nulla bona. While an argument could be made that the Sheriff did not have a reasonable basis for questioning title while the first writ was alive, there is testimony by one of the deputy sheriffs that indicates he met with one of the bank officers before the first writ had expired and saw the exhibit. In any event, the trial court found in an unchallenged finding of fact that the first writ was returned with the consent of the creditors' counsel. Thus, no liability attaches to the Sheriff under the first writ. *Matthews v. Perminter*, 162 S.W. 1180 (Tex.Civ.App.—Texarkana 1913, no writ).

5. Of course, the ultimate resolution of the "ownership" question is immaterial. The inquiry is not whether some entity other than the judgment debtor did in fact own the property; it is whether there are facts before the levying officer that give him a reasonable basis for concluding that some entity other than the judgment debtor is claiming an ownership interest in the property.

We have examined each of the creditors' points of error and find that the foregoing discussion either disposes of them directly or renders them moot. Accordingly, the judgment of the trial court is affirmed.